[Opinion delivered March 21, 1882.]

FRANK M. SPENCER v. GALVESTON COUNTY.

(Case No. 1415.)

1. ATTORNEY.— The fact that a district attorney for the district composed of the counties of Galveston and Harris was recognized by the district court as having a right to prosecute a suit for Galveston county, cannot estop the county, in a subsequent suit brought by him to recover commissions claimed in the former suit, from denying his authority to represent it, there being no such issue between the parties to the former suit.

2. DISTRICT ATTORNEY.— Before the adoption of the Revised Statutes, while county attorneys were required to perform certain duties which might be performed by district attorneys, there was no law expressly requiring district attorneys to perform the duties imposed upon county attorneys.

3. STATUTE CONSTRUED.— Under the act of August 21, 1876, and the laws in force prior thereto, it was not the duty of a district attorney to institute suit upon a defaulting county treasurer's bond.

4. DISTRICT ATTORNEY.— A district attorney who prosecutes a civil
suit for a county when not required so to do by law can recover no
compensation for his services in the absence of a contract with the
county.

APPEAL from Galveston.    Tried below before the Hon.
Wm. H. Stewart.

Suit by Spencer against Galveston county to recover
the sum of $2,650, claimed as fees and commissions fixed
by law and alleged to be due to him for official services as
district attorney and *ex-officio* county attorney, for the
prosecution on behalf of Galveston county of certain
suits instituted by the latter upon the official bonds of
Selim Rinker, deceased, late treasurer of said county, for
alleged defalcation, and which suits were terminated by
compromise made between the parties thereto, whereby
the defendants therein paid to the county the sum of
$26,500 in discharge of the Rinker bonds and in settle-
ment of the suits.

Appellant excepted to the following charge: "Having
his name entered as one of the attorneys for the county,
declarations of readiness and willingness to render serv-
ice, or prosecute, or assist in prosecuting such suits made
in open court, and to attorneys specially employed in such
suits, are not such attempts to render service as would
entitle the district attorney to recover in this suit."

He also excepted to the refusal of the court to give the
following charge:  "If the jury believe from the evidence
that F. M. Spencer — the plaintiff here — offered to pros-
ecute the causes Nos. 9421, 9425, 9426 and 9443 in con-
nection with other counsel, and was ready and willing to
do so, and was prevented by the plaintiff therein, the mere
fact that there were other counsel engaged in the causes at
the instance of the county commissioners' court, who did
prosecute the causes whilst said Spencer was connected
by his official relation to the causes and refused to co-
operate with him, would not deprive Spencer of the right

to ten per cent. commissions upon the amount so realized by a compromise of said causes made by the commissioners' court, and by which compromise it was agreed a judgment for Galveston county should be entered, although the money was paid without the actual entry of the judgment."

It was proved that on the 12th, 14th, 20th and 27th of November, 1877, Galveston county instituted in the district court of said county suits numbered respectively on the docket of said court 9421, 9425, 9426 and 9443, against Geo. F. Schneider, as administrator of estate of Selim Rinker, then deceased, and his sureties on official bonds of said Rinker, who, previous to and at the time of his death, was holding the office of treasurer for Galveston county, for an alleged breach of his bonds in failing to account for and pay over to Galveston county the amount of money therein alleged to have been collected and received by him for the use and benefit of that county, and which, as alleged, he had failed to account for and pay over. By means of those suits the county of Galveston sought to recover against Rinker, deceased, and his sureties on his official bonds, the sum of $27,340 in case No. 9421; the sum of $38,745 in case No. 9426; the sum of $27,852 in case No. 9425; the sum of $23,183 in No. 9443. Frank M. Spencer was, and had been continuously since the 12th day of January, 1873, district attorney of the criminal district court for the district composed of Galveston county and Harris county, Texas, having his permanent residence, at all times since his induction to office, in Galveston county, Texas. On the 11th day of January, 1878, while the suits were pending, Spencer made application by written motion to the district court of Galveston county, claiming therein that by virtue of his office and residence he was entitled to be admitted to prosecute the suits in his official capacity on behalf of Galveston county, and asked that he be permit-

ted to prosecute. This motion was resisted by Messrs. Finlay and Street, by whom the suits were brought, under employment of the commissioners' court of Galveston county, and it was also resisted by counsel for Rinker's bondsmen, who had filed, among other defenses, a plea to the jurisdiction, because it did not appear that the suits were prosecuted by the county attorney or any officer having by law such authority. The court, on hearing the motion, made its order in each of the cases, granting the same; to which ruling of the court plaintiff and defendants excepted, and the name of Spencer was accordingly entered as one of the counsel for the plaintiff. On the 12th of April, 1879, the administrator of Rinker and sureties on his bonds, by petition addressed to the commissioners' court, made .to them a proposition of compromise, in full settlement of their liability on the bonds on which suits were brought and as an adjustment thereof, to have rendered against them in the district court (all cases pending being consolidated) a judgment in favor of the county of Galveston for the sum of $26,500, to be paid as follows: $9,579 in cash, and $16,981 in county scrip at par. This proposition was accepted by resolution of the county commissioners' court on the 14th day of April, 1879, "agreeing to the same in manner as made in full settlement of the matters in controversy."

Spencer had nothing to do with the compromise, and seems not to have been consulted or recognized as counsel in the case by Street and Finlay, who conducted it. Verdict and judgment for the county.

*Willie & Cleveland,* for appellant.

I. It being the official prerogative of the appellant to prosecute and defend all actions in behalf of Galveston county, and having in his official capacity applied to the court to be so admitted to the prosecution of the "Rinker bond cases," and the court having granted the application

as made, the appellant thereby became counsel therein in connection with other counsel specially employed by the county, and having thus assumed the duties devolving upon him, and being ready and willing and offering to perform them, if the county chose to compromise the suits, he was not thereby deprived of his right to compensation, but is at least entitled to ten per cent. upon the amount realized by the county in the compromise of the said "Rinker bond suits." Gen. Laws of Texas, act .of July 23, 1870, sec. 7, p. 38; R. S., art. 241; Const. of 1875, art. V, secs. 1, 21; R. S., ch. 1; p. 43, ch. 2; Gen. Laws of Texas of 1876, p. 85, act to regulate and define the duties of county attorneys, sec. 1; also p. 86, sec. 7; p. 88, sec. 19; p. 286, sec. 7; Cunningham v. Hill, 25 Tex., 27; Myers v. Crockett, 14 Tex., 258; Allcorn v. Butler, 9 Tex., 56; Black. Com., vol. 1, book 2, p. 36; Adams v. Justices of Dougherty Co., 21 Ga., 206; Mayfield v. Moore, 53 Ill.; State v. Dunning, 67 Ind., 148; 20 Ind., 1; 15 La., 239; 28 Cal., 21; 30 Barb., 193; Comstock v. Grand Rapids, 40 Mich., 397, cited in U. S. Dig., vol. 10 (N. S.), 575; Brodie v. Watkins, 33 Ark., 545, cited in U. S. Dig. for 1880, p. 63.

II. The appellant being entitled to all the emoluments of the office to which he was chosen, could not be deprived of them by the acts of the commissioners' court in employing other counsel to undertake the prosecution of the "Rinker bond cases," which by law devolved on him, and which he was willing and ready and offered to prosecute, and which were being prosecuted by such other counsel by their procurement and assent; nor could he be deprived of emolument by the act of the county commissioners in compromising the said cases, thereby preventing further prosecution thereof; nor could he be deprived of ten per cent. commissions allowed by law on the amount realized, by the omission of the parties to the compromise to have a judgment for $26,500 in favor of the county form-

ally entered — as was agreed should be done, — but who, instead thereof, consummated the intention and purpose of the compromise by immediate payment of the amount, and dismissal of the cases then pending, and the abandonment of appeal in the other cases theretofore tried. Same as before cited; also Smith v. Lipscomb, 13 Tex., 532; Weeks on Attorneys at Law, sec. 334, p. 553; sec. 341, p. 570; sec. 341, pp. 577–8; sec. 362, p. 600; sec. 366, pp. 603–4; Bishop on Contracts, sec. 695.

III. It being the official duty and right of the appellant to prosecute the cases in behalf of the county, the refusal or neglect upon the part of the counsel specially employed by the county, acting in accordance with instructions from the county commissioners to confer with the county attorney in respect to their prosecution, would be such hindrance and prevention of the county attorney, who offered and was willing and ready to discharge whatever duty was devolved on him as an officer, as would amount to a waiver of performance; and his offer to perform would in such event be equivalent to performance, if performance were a condition precedent to his right of recovery. Bishop on Contracts, sec. 695.

*Mason & Davidson,* for appellee.

STAYTON, ASSOCIATE JUSTICE.— If the appellant was by virtue of his office as district attorney of the district composed of the counties of Galveston and Harris, entitled to perform the duties pertaining to a county attorney, he being a resident of the county of Galveston, and ready and willing to prosecute the suits against Rinker and his sureties, under the facts of the case, the county could not avoid the payment of the sum which he claims. The county commissioners' court in such case would not have the power to practically remove from office a person duly elected thereto in the manner prescribed by law, whose duties are defined and whose rights are fixed by the law

of the land; nor would it have the power to deprive him of the emoluments which pertain to the office.

The right of the appellant, however, depends upon whether or not it pertained to the duties of his office to prosecute against Rinker and his sureties the suits upon which the claim in this cause is based; and this inquiry it devolves upon us, lying as it does at the very foundation of the claim, to make. The fact that the court below recognized his right pending those suits to prosecute the suits as district attorney, cannot be held as an adjudication of that question; for there was no suit then pending in which that was one of the questions in issue between the parties to this suit.

The right and duty of the appellant to perform the duties which would have devolved upon a county attorney of Galveston county, could there have been one, will be briefly examined.

The constitution of this state continued the criminal district courts of the counties of Galveston and Harris with the district, jurisdiction and organization such as existed prior to the adoption of the present constitution. Constitution, art. V, sec. 1.

Sec. 21, art. V of the constitution provides that "a county attorney for counties in which there is not a resident criminal district attorney shall be elected by the qualified voters of each county, who shall be commissioned by the governor, and hold his office for the term of two years. In case of vacancy, the commissioners' court of the county shall have power to appoint a county attorney until the next general election. The county attorney shall represent the state in all cases in the district and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a district attorney, the respective duties of district attorneys and county attorneys shall, in such counties, be regulated by the legislature," etc.

This provision of the constitution does not prescribe the duties of a district attorney, nor does it provide that the county attorneys shall perform any duties other than such as are required to be performed *for the state*.

The act of August 7, 1876, p. 85, defined more fully than the constitution had done the duties and powers of county attorneys, and amongst other things made it their duty "to prosecute and defend all other actions in which the state or county is interested," and it also fixed their compensation.

On the 21st August, 1876, an act was passed to regulate the respective duties of district and county attorneys; and it provided "that the powers and duties of district attorneys, including the attorneys for the criminal district court of the counties of Galveston and Harris, shall be the same as is now or may hereafter be prescribed by law, subject, however, to the following restrictions."

The next section of the act above referred to defines the duties of the county attorneys in the inferior courts of the counties, and makes it their duty to represent the state in the district courts in the absence of the district attorney, and also to assist the district attorney in said court when requested by him to do so, and provides for his compensation in such cases. General Laws 1876, p. 283.

This is substantially a statement of the legislation pertinent to the present inquiry, after the adoption of the present constitution until the adoption of the Revised Statutes; and as all of the services under which the appellant claims were performed prior to their adoption, it will not be necessary to state such provisions thereof as might bear upon that question, further than the matters before referred to have been incorporated into the Revised Statutes.

From the foregoing statement it will be seen that while the county attorneys were required to perform certain

duties which might be performed by district attorneys, there was no law expressly requiring district attorneys to perform the duties imposed upon county attorneys.

The powers of district attorneys, then, in so far as the present inquiry is concerned, must be determined by the act of August 21, 1876, and the laws in force before that time. The general duties of district attorneys prior to the act above referred to are defined as follows:

"That it shall be the duty of each district attorney to attend all terms of the district court in the district in which he may have been elected; to conduct, all prosecutions for crimes and offenses cognizable in such courts; to prosecute and defend all other actions in which the state is interested, and to perform such other duties as may be prescribed by the constitution and laws of the state." Pasch. Dig., 182.

There are other provisions making it the duty of district attorneys to advise certain county officers (Pasch. Dig., 186, 187) touching matters affecting the public interest or the revenue of the state; also provision making it the duty of district attorneys to collect money due from defaulting officers of the state. Pasch. Dig., 197.

Other laws existed affecting the duties and powers of district attorneys in reference to the prosecution of criminal causes, and regulating their duties in relation to the collection of bail bonds and other like obligations payable to the state, the proceeds of which when collected go into the treasury of the proper county; but we find no law which made it the duty of a district attorney to institute or prosecute any suit upon a claim or claims which a county may have, upon bonds or other obligations payable to a county, such as were the basis of the suits by the county of Galveston against Rinker and his sureties.

The condition of the bond required by law of district attorneys, at the time the "Rinker bond" suits were pending and terminated, illustrates the question. Such

bonds were required to be "conditioned that he will faithfully pay over, in the manner prescribed by this act, all moneys which he may collect for the use of the state." Pasch. Dig., 181, 6141. It would be difficult to believe, in the absence of a plain provision of the law to the contrary, that any public officer had the power and that it was his duty to collect money for the public, when no security was required to be given by, such officer that he would faithfully pay over the moneys which he might collect.

The Revised Statutes provide for a bond "conditioned that such district attorney will faithfully pay over, in the manner prescribed by law, all money which he may collect, or which may come to his hands for the state or for any county." To what money the condition of the bond refers to, when collected for a county, under the Revised Statutes, it is unnecessary under the facts of this case to consider. State v. Norrell, 53 Tex., 427.

It is claimed that in the absence of a law making it the duty of district attorneys, in the counties of their residence, to perform such duties as the law imposes upon county attorneys, the same must be implied from the necessity of the case. Such we do not understand to be the law. One who claims the right to exercise the powers of a public office and to receive the emoluments thereof, ought to be able to point to the law which authorizes him to do so, and in the absence of such a law such powers and rights cannot be implied. If the power was given, everything necessary to enable him to perform the duties could be implied. The fact that it would seem highly proper that every county should have an attorney who is a public and bonded officer to represent its interests in the courts, might and perhaps ought to have great weight with the legislative department of the government in influencing it to provide such an officer; but until it does so provide the courts have no power by construction to enlarge the powers of any officer, or to

impose upon him duties which the legislature has not imposed.

In reference to the administration of the criminal laws, the several district attorneys of the state have as full power as have county attorneys, and, by conferring upon them such powers, it is to be presumed that the legislature believed it was doing all that was necessary for the public good, and that in counties where there was a resident district attorney, such counties could manage such litigation as might arise, in reference to such matters as had not been confided to district attorneys, without the aid of a public officer to represent them as attorney, by the employment of attorneys as occasion might arise. With the policy of such a course the courts have no concern.

Although the constitution provides that the legislature may pass laws requiring the election of district attorneys in such districts as it might deem proper, and although by force of its own terms it may have continued the office of district attorney in the district composed of the counties of Galveston and Harris as the same aforetime had been, yet it does not define their powers nor duties; and the law as it then stood, or as it has been enacted since the adoption of the constitution, must be looked to for the purpose of determining their powers and duties. Finding no law which made it the duty of the appellant to prosecute the suits upon the "Rinker bonds," we are not authorized to hold that he had the power and that it was his duty to prosecute them, simply because that officer and a county attorney were empowered each to perform certain other duties like in character or even the same; nor because the legislature had failed to provide a public officer whose duty it was to prosecute them. Such had been the status of the question at all times since the formation of the state government, unless in those cases in which county attorneys were empowered to prosecute such suits.

It not being the duty of the appellant to prosecute the

suits on account of which the compensation in this cause is claimed, he could not, in the absence of a contract with the county, be entitled to compensation therefor.

There being no error in the judgment of the court below for which the judgment rendered should be reversed, and the matters herein considered resting solely upon the legal question involved, which goes to the very foundation of the claim of the appellant, the judgment of the court below is affirmed.

AFFIRMED.